# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain JAMES H. LEE**
**United States Army, Appellant**

ARMY 20140309

Headquarters, National Training Center and Fort Irwin
Douglas K. Watkins, Military Judge
Lieutenant Colonel Jeffrey A. Miller, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Charles D. Lozano, JA (on brief); Colonel Mary J. Bradley, JA; Lieutenant Colonel Charles D. Lozano, JA (on reply brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major John K. Choike, JA; Captain Robyn M. Chatwood, JA (on brief).


11 February 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAIGHT, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his plea, of presenting for approval and payment a false claim against the United States, in violation of Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932 (2012) [hereinafter UCMJ].  The military judge sentenced appellant to a dismissal and a fine in the amount of $3,500.00.  The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant assigns three errors, two of which allege ineffective assistance of counsel.  While we discuss the allegations of ineffective assistance of counsel, we find none of the assigned errors merits relief.

## BACKGROUND

When changing duty stations from Fort Leonard Wood, Missouri, to Fort Irwin, California, under the guise of doing a legitimate, partial Do-It-Yourself move of household goods, appellant went to a hardware store, purchased multiple heavy bags of cement, put them in his privately owned vehicle, weighed that vehicle, and then immediately returned those bags of cement for a refund. Upon arrival at Fort Irwin, appellant submitted a claim for reimbursement based upon the fraudulent weight ticket. Appellant's scheme was found out, and he ultimately pleaded guilty to fraud against the United States without benefit of a pretrial agreement or stipulation of fact.

Appellant now claims he was denied his Sixth Amendment right to effective assistance of counsel when his defense counsel failed to inform him of the process for negotiating pretrial agreements or submitting an offer to plead guilty. This failure, according to appellant, led to appellant's decision to plead guilty and be sentenced by a military judge alone without the benefit of a pretrial agreement. Appellant also claims he was denied his Sixth Amendment right to counsel when his defense counsel failed to identify and investigate potential mitigation evidence. Appellant submitted affidavits in support of his assertions. Upon an order from this court, defense counsel submitted an affidavit responding to appellant's claims.

## LAW AND DISCUSSION

"Claims of ineffective assistance of counsel are reviewed de novo." *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011). In evaluating allegations of ineffective assistance of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard requires appellant to demonstrate: (1) that counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Id*. Appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The relevant issue is whether counsel's conduct failed to meet an "objective standard of reasonableness" such that it fell outside the "wide range of professionally competent assistance." *Id*. at 688, 690. "On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-307 (C.A.A.F. 2002) (citing *Strickland*, 466 U.S. at 689).

### A. Claim that Ineffective Assistance of Counsel Led Appellant to Plead Guilty Without a Pretrial Agreement

First, we must determine if a post-trial evidentiary hearing is required with respect to this particular claim of ineffective assistance of counsel. It is not.

Appellant submitted an affidavit wherein he claims he was totally unaware that his defense counsel could attempt to negotiate a pretrial agreement with the convening authority or submit an offer to plead guilty. To the contrary, in his affidavit, defense counsel swears that he fully discussed pretrial options with his client, to include offers to plead, deals, sentence caps, and resignations in lieu of court-martial.[1]

*United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), provides the following guidance applicable to this claim of ineffective assistance.

> [I]f the [appellant's] affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court [of Criminal Appeals] may discount those factual assertions and decide the legal issue.

Furthermore, *Ginn* continues:

> [W]hen an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

*Id*.

At trial, appellant repeatedly confirmed to the military judge that not only was he satisfied with his defense counsel but also that he had consulted fully with his defense counsel, had received the full benefit of counsel's advice, and was satisfied that counsel's advice had been in appellant's best interest. There is no reason now

---

[1] Appellant, with counsel's assistance, did submit a resignation in lieu of court-martial. It was disapproved at the Secretariat level.

to doubt the propriety of appellant's expressed satisfaction. This is particularly true in light of the fact that appellant affirmatively agreed that he had been provided "enough time and opportunity to discuss this case" with counsel immediately after the military judge had inquired about the existence of pretrial agreements or any other agreements or promises made "to get [appellant] to plead guilty."

Beyond his assertions at trial, the appellate record now contains definitive evidence that appellant was fully aware of pretrial options such as offers to plead, pretrial agreements, and sentence caps. Months before trial, appellant signed an "Acknowledgment of Rights Advisement." This memorandum, which documents advice provided to appellant by his defense counsel, contains an entire section outlining the ability to submit offers to plead, enter into pretrial agreements, and negotiate sentence limitations. Contrary to what appellant alleges in his assigned error, he was fully aware of the "process for negotiating pretrial agreements or submitting an offer to plead."

Even assuming that counsel was deficient in informing his client of pretrial options, appellant has failed to meet his burden to establish prejudice. *See United States v. Quick*, 59 M.J. 383 (C.A.A.F. 2004). Not only is there no right to a pretrial agreement, appellant does not even assert that he would not have pleaded guilty absent the alleged ineffectiveness. *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)); *see also United States v. Rose*, 71 M.J. 138 (C.A.A.F. 2012). Accordingly, this claim of ineffective assistance of counsel must fail.

### B. Claim that Counsel was Ineffective by Failing to Identify and Investigate Potential Mitigation Evidence

Again, we must determine if a post-trial evidentiary hearing is required with respect to this particular claim of ineffective assistance of counsel. Again, it is not.

Before trial, appellant told his counsel that he was "struggling with depression . . . and feeling a great deal of anxiety." Appellant also advised counsel that he was "seeing Behavioral Health" as well as receiving spiritual counseling from a military chaplain.

In preparation for trial, counsel and client discussed potential evidence for the presentencing stage of the court-martial. Counsel desired to present evidence of "past military performance, character, and rehabilitative potential." Furthermore, counsel advised appellant that "it would be more appropriate for [the military chaplain] to assist . . . during the clemency phase." The adjudged sentence included a dismissal and a $3500 fine but no confinement or forfeitures.

4

When coordinating his Rule for Courts-Martial [hereinafter R.C.M.] 1105 submission with counsel, appellant drafted a letter of apology in which it became apparent that his depression had been more serious than previously revealed to counsel. Appellant further asserted he had been suicidal but, with help from Behavioral Health and the chaplain, was now on a better path and was healing from his past depression.

Appellant now claims that his counsel was ineffective because appellant's general statements regarding depression and anxiety "should have triggered" counsel to find out the depth, extent, and exact nature of appellant's mental health issues. Appellant argues the failure to probe deeper into his mental health problems was prejudicial because further investigation would have led to more and different types of extenuation and mitigation evidence than what was presented at trial.

In his affidavit, defense counsel responds and agrees that he was unaware of appellant's past suicidal ideations or the depth of appellant's depression until reviewing the final draft of appellant's apology to be included in the R.C.M. 1105 submission. Defense counsel details the steps he did take in light of his limited knowledge of appellant's ongoing anxiety. These steps included a complete review of "the physical, medical, and mental records" which were submitted as part of appellant's resignation packet, contact with the chaplain, and conversations with appellant's supervising officers, appellant's subordinates, as well as appellant's brother. None of these records or conversations with people close to appellant, despite "persistent questioning regarding background, mentorship, emotional and psychological well-being," even hinted that appellant's mental state had ever declined to the serious depths at which it had apparently reached. Indeed, in his affidavit, defense counsel voices frustration that his client did not earlier disclose the level of his depression despite repeated and privileged conversations regarding possible explanations as to why this otherwise commendable officer had engaged in an isolated act of criminal conduct.

Regarding the chaplain, counsel thought it best not to call him as a sentencing witness. The defense had decided to approach this guilty plea from "a high ground that rested on appellant's *immediate* acceptance of guilt post-confrontation." The chaplain's testimony regarding appellant's gradual spiritual transformation in the months leading up to trial "would have directly contradicted the relevant timing of that testimony." Also, defense counsel was of the opinion that because the chaplain "seemed completely aghast and almost indignant when considering the Command's decision to take the case to a court-martial," his testimony would undercut the defense's approach to the presentencing case.

Again, we look to guidance from *Ginn*.

5

> [I]f the facts alleged in the [appellant's] affidavit allege
> an error that would not result in relief even if any factual
> dispute were resolved in appellant's favor, the claim may
> be rejected on that basis.
>
> . . . .
>
>  . . . if the affidavit is factually adequate on its face to
> state a claim of legal error and the Government either does
> not contest the relevant facts or offers an affidavit that
> expressly agrees with those facts, the court can proceed to
> decide the legal issue on the basis of those uncontroverted
> facts.

*Ginn*, 47 M.J. at 248.

Appellant and trial defense counsel agree as to what counsel knew and when he knew it with respect to appellant's mental issues and past suicidal ideations. The fact is that appellant was not as forthcoming with his counsel as he could have been and now faults counsel for not independently discovering the depth of appellant's depression. We decline to find such fault.

The decision not to call the chaplain to testify was one of a strategic or tactical nature. *United States v. Paxton*, 64 M.J. 484, 489-90 (C.A.A.F. 2007). It is well-established that, "[a]s a general matter, we will not second-guess" decisions of that type by defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (citations and internal quotation marks omitted). We are satisfied that trial defense counsel made a "reasoned tactical decision" regarding the chaplain. *United States v. Weathersby*, 48 M.J. 668, 673 (Army Ct. Crim. App. 1998). Defense counsel was not ineffective in his preparation for and presentation of appellant's sentencing case.

Even assuming deficient performance, we find appellant has not met his burden to show that any difference in counsel's pretrial preparation would have led to a more favorable outcome or one that is more reliable. *See United States v. Akbar*, 74 M.J. 364 (2015). The President has specifically authorized that "[r]egardless of the maximum punishment specified for an offense in Part IV of [the *Manual for Courts-Martial*], a dismissal may be adjudged for any offense of which a commissioned officer ... has been found guilty." R.C.M. 1003(b)(8)(A). Appellant's fraud went straight and directly to his integrity and trustworthiness.

Like the previously discussed allegation, this claim of ineffective assistance of counsel also fails.

## CONCLUSION

On consideration of the entire record and the submissions of the parties, the findings of guilty and the sentence are AFFIRMED.

Judge PENLAND and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court