UNITED STATES, Appellee

v.

Scott A. BUBER, Sergeant
U.S. Army, Appellant

No. 05-0262

Crim. App. No. 20000777

United States Court of Appeals for the Armed Forces

Argued December 6, 2005

Decided March 16, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain Eric D. Noble (argued); Lieutenant
Colonel Kirsten V. C. Brunson and Major Billy B. Ruhling II (on
brief); Colonel Mark Cremin, Lieutenant Colonel Mark Tellitocci,
and Major Allyson G. Lambert.

For Appellee:  Captain Michael D. Wallace (argued); Colonel
Steven T. Salata, Lieutenant Colonel Theresa A. Gallagher, and
Major Natalie A. Kolb (on brief); Lieutenant Colonel Mark L.
Johnson.

Military Judges:  Robert F. Holland and Steven V. Saynisch


**This opinion is subject to revision before final publication**.

Judge ERDMANN delivered the opinion of the court.

Sergeant Scott A. Buber pled not guilty to charges of false official statement, unpremeditated murder, and assault upon a child under the age of sixteen in violation of Articles 107, 118, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 918, 928 (2000), respectively. He was convicted by a panel of enlisted and officer members and sentenced to a dishonorable discharge and thirty-three years of confinement. The convening authority approved the sentence. The United States Army Court of Criminal Appeals found the evidence factually insufficient to support the findings of murder and assault upon a child, set aside those findings and dismissed the charges, and modified the finding of guilty to false official statement. The lower court reassessed the sentence and affirmed only so much of the sentence as provided for a bad-conduct discharge and confinement for two years. United States v. Buber, No. ARMY 20000777 (A. Ct. Crim. App. Jan. 12, 2005).

We granted Buber's Petition for Grant of Review on a single issue concerning whether the Army court properly reassessed the sentence rather than directing a rehearing on the sentence.[1]

_____

[1] We granted review on the following issue:

>  WHETHER THE ARMY COURT OF CRIMINAL APPEALS
>  ERRED IN REASSESSING APPELLANT'S SENTENCE TO
>  TWO YEARS CONFINEMENT AND A BAD-CONDUCT

United States v. Buber, No. 05-0262/AR

A Court of Criminal Appeals can reassess a sentence to cure the effect of prejudicial error where that court can be confident "that, absent any error, the sentence adjudged would have been of at least a certain severity."  United States v. Sales, 22 M.J. 305, 308 (C.M.A. 1986).  Where the Court of Criminal Appeals can be so convinced, then that court may reassess and affirm only a sentence of that magnitude or less. Id.  Buber claims that the Army court abused its discretion in deciding to reassess his sentence rather than order a rehearing because a charge alleging a single, exculpatory false official statement may not have even been referred to a courts-martial much less result in a sentence to a bad-conduct discharge and two years in jail.  We find that the Army court's decision to reassess this sentence was an abuse of discretion.

BACKGROUND

After trial on the merits, Buber stood convicted of: killing his four-year-old stepson by shaking and striking the child; separately assaulting the child by striking the child "in the head and face with his hands and/or an object"; and making a false official statement about the circumstances of the child's death.  The members were properly instructed that the maximum sentence for these offenses included a dishonorable discharge,

DISCHARGE FOR A SINGLE SPECIFICATION OF A
FALSE OFFICIAL STATEMENT TO AN INVESTIGATOR.

3

confinement for life with or without eligibility for parole, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The members returned a sentence to a dishonorable discharge and thirty-three years of confinement.

Finding that the defense theory of accidental injury could not be discounted beyond a reasonable doubt, the Army Court of Criminal Appeals set aside the findings of murder and assault and dismissed those charges. Buber, No. ARMY 20000777, slip op. at 2, 11. Additionally, the court found that a portion of the specification alleging false official statement was unsupported by factually sufficient evidence and that the specification was "duplicitous, in that the statements to SA [Special Agent] Siebert and Dr. Lyngholm were given at different times and places." Id. at 10. As a result, the Army court set aside the factually insufficient and duplicitous portions of the false official statement specification, dismissed them, and affirmed the remaining portions of the finding of guilt. Thus, reassessment of the sentence was based only on the following specification under Article 107, UCMJ:

> In that Sergeant Scott A. Buber . . . did .
> . . with intent to deceive, utter a
> statement to Special Agent Nicolas Siebert
> to wit: Ja'lon Johnson became unresponsive
> after falling asleep on 29 November 1999 and
> sustained no injuries on 29 November, or
> words to that effect, which statement was
> totally false in that Ja'lon Johnson became

---

United States v. Buber, 61 M.J. 473 (C.A.A.F. 2005).

> unresponsive after sustaining injuries on 29 November 1999 when he was awake, and was then known by the said SGT Scott A Buber to be so false.

See id. at 10-11.

In discussing its decision to reassess the sentence rather than order a sentence rehearing, the Army court cited the applicable law and concluded:

> Appellant's duty performance was described as being in the top five percent of noncommissioned officers. He was dependable and demonstrated initiative, tenacity, and creativity. Given the serious circumstances of appellant's lie, our collective experience, and the principles of Sales, we conclude that we can reliably determine what sentence would have been imposed if these errors had not occurred.

Id. at 10. Having determined that it could reassess the sentence, the Army court affirmed only so much of the sentence as provided for a bad-conduct discharge and confinement for two years.[2]

---

[2] Buber petitioned this court for extraordinary relief in the nature of a writ of habeas corpus on March 9, 2005, requesting his immediate release from confinement. Buber claimed that he was entitled to release in that he had already served confinement in excess of that ultimately affirmed by the Army court. On March 14, 2005, we ordered the Government to show cause why the requested relief should not be granted. The Government answered the order to show cause on March 18, 2005. On March 30, 2005, we granted Buber's petition for extraordinary relief in the nature of a writ of habeas corpus and ordered his immediate release from confinement. Buber v. Harrison, 61 M.J. 70 (C.A.A.F. 2005).

DISCUSSION

Buber claims that the sentencing landscape in this case changed so dramatically that even the experienced judges of the Army court could not make "a reliable determination as to the minimum punishment a panel would have imposed had the remaining charge and specification stood alone." Buber suggests further that a single specification alleging a false official statement might not even be tried by court-martial. He claims that given the mitigating evidence of good duty performance and soldierly character, this reassessment was an abuse of discretion and miscarriage of justice.

The Government responds that there was no abuse of discretion. Noting that the false official statement related to a child's death and could have involved serious consequences, the Government urges that the Army court could "reliably determine the sentence that would have been imposed absent the alleged error in this case." We will overturn a Court of Criminal Appeals' reassessment only for obvious miscarriages of justice or abuses of discretion. United States v. Doss, 57 M.J. 182, 185 (C.A.A.F. 2002); United States v. Eversole, 53 M.J. 132, 133 (C.A.A.F. 2000); United States v. Harris, 53 M.J. 86, 88 (C.A.A.F. 2000); United States v. Curtis, 52 M.J. 166, 169 (C.A.A.F. 1999). Buber bears the burden of showing that the Army court's reassessment of his sentence was an abuse of

United States v. Buber, No. 05-0262/AR

discretion. United States v. Hawes, 51 M.J. 258, 260 (C.A.A.F. 1999).

In United States v. Sales, this court articulated the standard to be applied in determining whether a sentence may be reassessed to cure prejudicial error:

> In connection with reassessment, we have emphasized
>
>> that, when a Court of Military Review reassesses a sentence because of prejudicial error, its task differs from that which it performs in the ordinary review of a case. Under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, the Court of Military Review must assure that the sentence adjudged is appropriate for the offenses of which the accused has been convicted; and, if the sentence is excessive, it must reduce the sentence to make it appropriate. However, when prejudicial error has occurred in a trial, not only must the Court of Military Review assure that the sentence is appropriate in relation to the affirmed findings of guilty, but also it must assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed. . . .
>
> United States v. Suzuki, 20 M.J. 248, 249 (C.M.A. 1985). Thus, if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met. Of course, even within this limit, the Court of Military Review will determine that a sentence it proposes to affirm will be "appropriate," as required by Article 66(c).

7

United States v. Buber, No. 05-0262/AR

> In short, a reassessed sentence must be
> purged of prejudicial error and also must be
> "appropriate" for the offense involved.

22 M.J. at 307-08 (footnote omitted).

To validly reassess a sentence to purge the effect of error, the court must be able to make a number of determinations. The court must be able to discern the extent of the error's effect on the sentence. Hawes, 51 M.J. at 260 (quoting United States v. Reed, 33 M.J. 98, 99 (C.M.A. 1991)). The reassessment must be based on a conclusion that the sentence that would have been imposed at trial absent the error "would have been at least of a certain magnitude." Doss, 57 M.J. at 185. This conclusion about the sentence that would have been imposed must be made "with confidence." United States v. Taylor, 51 M.J. 390, 391 (C.A.A.F. 1999); see also Eversole, 53 M.J. at 134 (indicating that there must be a "degree of certainty" in determining what the trial court would have done absent the error).

No higher sentence than that which would have been imposed by the trial forum may be affirmed. Hawes, 51 M.J. at 260 (quoting United States v. Davis, 48 M.J. 494, 495 (C.A.A.F. 1998)). A "dramatic change in the penalty landscape" gravitates away from the ability to reassess. United States v. Riley, 58 M.J. 305, 312 (C.A.A.F. 2003). This court will overturn the lower court's reassessment of a sentence where we cannot be

8

confident that the Court of Criminal Appeals could "reliably determine what sentence the members would have imposed." Id.; see United States v. Vasquez, 54 M.J. 303, 306 (C.A.A.F. 2001).

Although the content of this false statement relates to the injury and eventual death of a young child, we must bear in mind that an accused is to be sentenced only for the offenses he has been found guilty of committing beyond a reasonable doubt. Buber's reassessed sentence must be punishment for only the offense of false official statement as aggravated by facts and circumstances admissible in aggravation of that offense –– "circumstances directly relating to or resulting from the offense[]." Rule for Courts-Martial (R.C.M.) 1001(b)(4).

In its opinion, the Army court did not articulate and we are uncertain what "serious circumstances of appellant's lie" it considered in fashioning the reassessed sentence. Buber, No. ARMY 20000777, slip op. at 10. The Army court dismissed that portion of the specification indicating that the statement was made to a doctor. The single statement made to law enforcement ten days before the child's death does not necessarily support any determination that there was a causal connection between the statement to law enforcement and any medical treatment or the failure to give any necessary medical treatment. The child had been evacuated to Anchorage before SA Seibert became involved and interviewed Buber in Buber's home. Nothing in SA Seibert's

testimony indicates that he passed Buber's statements on to medical personnel or that the statement made to Seibert was relied upon by medical personnel in treating the child. At a minimum, it is uncertain what, if any, consequential relationship exists between the false statement to SA Seibert and the child's subsequent death.[3]

In addition, the sentencing landscape in this case changed dramatically as a result of the Army court's decision. There are no longer findings of murdering and assaulting a child. There is no longer a maximum sentence that includes confinement for life without eligibility for parole. Instead, the sentencing body would now have before it a single false official statement and a maximum sentence that includes only five years of confinement. See Manual for Courts-Martial, United States pt. IV, para. 31.e. (2005 ed.) (MCM). In Riley this court addressed a similar dramatic change in the sentencing landscape as follows:

> In light of the dramatic change in the "penalty landscape" in this case, we do not

---

[3] This case presents a situation in which the admissible evidence at sentencing may have significantly changed. Specifically, the permissible aggravation evidence "directly related" to the false official statement may not have included all the evidence presented on the question of homicide. At a rehearing, Buber would have had the opportunity to litigate the scope of proper aggravation evidence under R.C.M. 1001(b)(4). Where, as here, the Court of Criminal Appeals sets aside significant findings of guilt and reassesses the sentence, the court should provide a more illuminating explanation of the aggravation evidence it considered upon reassessment.

> believe that an appellate court can reliably determine what sentence the members would have imposed.  The court members considered a maximum sentence including life imprisonment but imposed a term of 25 years. The maximum term of confinement is now three years.  MCM Part IV, para. 85.e.  The offense has been reduced from an intentional killing to an act of simple negligence resulting in death.  We conclude that the only "fair course of action" is a sentencing rehearing.

Riley, 58 M.J. at 312.  Riley also involved the death of a child.  The offense that remained in Riley, negligent homicide, directly related to the death of that child.  In Buber's case, there is no death-related offense -- a point that makes Buber's penalty landscape even more dramatically changed than Riley's.

As we did in Riley, we conclude that the only fair course of action in this case is to order a sentence rehearing.  With all due respect to the experience of the judges of the Army Court of Criminal Appeals, we are not convinced that the reviewing court could reliably determine what sentence the members would have imposed.  Nor are we able to affirm that this reassessed sentence is no greater than that which would have been imposed absent the findings that have been set aside.

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The sentence is set aside.  The record is returned to the Judge Advocate General of the Army for a rehearing on sentence.